## Peter Wozniak, Plaintiff in Error, v. International Harvester Company, Defendant in Error.

### Gen. No. 17,356.

1. MASTER AND SERVANT—*where employe has a right to assume there is protection from danger.* Where an employer places a screen in front of a vise to prevent chips from flying when cut off rivets, an employe has a right to assume that the screen is a sufficient protection unless he knows that it is not, or under the circumstances should know.

2. MASTER AND SERVANT—*when evidence is not sufficient to justify conclusion that plaintiff should have known of risk.* In a personal injury action based on the ground that defendants were negligent in not furnishing plaintiff with a reasonably safe place to work, the evidence not being sufficient to establish that a screen was manifestly such an insufficient protection as to justify the conclusion as a matter of law that all reasonably prudent and careful men under similar circumstances and with like experience of plaintiff would know there was danger, it is error to instruct the jury to find the defendant not guilty.

BAKER, J., dissenting.

Error to the Superior Court of Cook county; the Hon. ALBERT C. BARNES, Judge, presiding. Heard in this court at the March term, 1911. Reversed and remanded. Opinion filed April 21, 1913.

HENRY B. SPURLOCK, for plaintiff in error.

F. J. CANTY and J. C. M. CLOW, for defendant in error.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The plaintiff brought suit against the defendant to recover damages for personal injuries. At the close of the evidence introduced on the trial by the plaintiff the court instructed the jury to find the defendant not guilty, and the verdict being so returned, entered judgment thereon, to reverse which the plaintiff sued out this writ of error.

The ground of negligence relied upon by the plain-

tiff is that the defendant did not furnish him a reasonably safe place to work. The plaintiff was working for the defendant in a large room two hundred feet long east and west and fifty feet wide. A gangway about twenty feet wide extended through the center of the room its entire length. On each side of the gangway was a row of grindstones, all covered and guarded excepting a space of about six inches, where the grinding was done. In this room were three "dryers," a combination of steam pipes, in which knives were placed to dry. One was at each end of the room and one about the middle of the room on the north side of the gangway. On the south side of the gangway about thirty-five or forty feet southeast of the dryer was a vise, in which corn sickles were fastened and the ends of certain rivets on the said corn sickles were then cut off by a man with a hammer and chisel. An iron screen or shield about five feet high and three feet wide stood about four feet in front of the vise, between the vise and gangway, for the purpose of preventing the metal chips flying in that direction out into the room. These conditions had existed during all the time the plaintiff had worked there, some seven or eight years. On the day in question one of the metal chips, struck from one of the sickles or knives, flew past the said screen about fifteen feet to the northwest and struck the plaintiff in the eye, destroying same. At the time the plaintiff was in the gangway carrying knives to put on a dryer and had been so employed for about three weeks. Before that time he had been straightening knives and plates and grinding rivets and knives. When he worked at grinding he had worked at the east end of the building. The plaintiff said he had worked all over the building and for the first five years at a dryer, but in just what way is not clear from the evidence. He also had worked at chipping the rivets for about fifteen minutes, but was unable to do the work of chipping.

Whether the defendant exercised ordinary care in

the placing of a screen of that size and in that position as a protection against the flying metal chips, and whether the plaintiff was guilty of contributory negligence, we think are clearly questions of fact for the jury. The serious question presented on this record, and the one upon which the defendant principally relies, and upon which it is said the court instructed the jury, is the assumption of risk by the plaintiff. We agree with the defendant that the danger from metal chips flying about like those struck from the knives in the vise, as shown in this case, is so obvious a danger that we would be obliged to hold that all reasonably prudent and careful men would be bound to know and appreciate the same; and this danger was sought to be avoided by placing the iron screen in front of the vise, as indicated. The plaintiff knew that in the work in question the metal chips would fly out from the knives when cut off in the manner indicated, and must have known that such chips flying about were dangerous. He also knew that the screen was put up to stop the chips. The question therefore is, did he know that the screen did not protect against the said chips, or, if he did not, shall we hold that he should have so known?

Under well settled rules of law, the plaintiff had a right to presume that the placing of the screen by the defendant was a sufficient protection from danger from flying chips unless the plaintiff knew that it was not, or under all the circumstances should have so known. The plaintiff testified that he did not know that the screen did not stop all of the chips; that he had never seen any fly past the screen, and had never been told that they did or heard any talk about them going past the screen; that he had never heard of any one being hurt in that manner (although the evidence shows that others had been so hurt) and the few moments he worked at chipping the chips went downward toward the screen. This evidence, accepting it as true on the motion to instruct, establishes the fact

that the plaintiff did not know that the screen was not sufficient protection from the danger of flying chips. The remaining question, and upon which depends the determination of the case here, is whether the said screen was so manifestly an insufficient protection from the flying chips that we should hold as a matter of law that it was open and obvious to all reasonably prudent and careful men under similar circumstances and with like experience of plaintiff. On this question the court is unable to agree.

The testimony is that the room in question was at times so dark that it was difficult to see, and there was much dust and noise therein. The floor was of cement and "kind of dark." The witnesses, Ciciera and Seradski, called by the plaintiff, testified on cross-examination that a great many of these chips were scattered about on the floor, even over to the north wall, and that the floor was swept every night. Seradski had done chipping there for many years and testified that he had never seen but one chip pass the screen, but a great many did; that they were about three-eighths of an inch in diameter and coiled over and were black except the side chipped off, which was white; that "as a rule these chips flew like bullets and you could not see them at all." The evidence is also that there would be months that no chipping was done. It was usual to do this work in the spring and fall and then at irregular intervals. Sometimes an hour a day, sometimes several hours and sometimes two or three days a week. The plaintiff had taken knives away from the vise and had worked all about the room and it cannot be determined from the record with any certainty how much opportunity he had for observing the insufficiency of the screen to stop the chips from flying about. Under all the circumstances the majority of the court are of the opinion that the question that the plaintiff should have known that the screen was not sufficient protection from the flying chips was a question of fact "upon which reasonable men of fair

intelligence may draw different conclusions," and that the cause should have been submitted to the jury.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

MR. JUSTICE BAKER dissenting.